In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-2006

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

v.

FEMI JOHNSON,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 CR 103-2—**Matthew F. Kennelly**, *Judge.*

ARGUED DECEMBER 2, 2002—DECIDED MARCH 24, 2003

Before BAUER, POSNER, and ROVNER, *Circuit Judges.*

POSNER, *Circuit Judge.* Indicted for trafficking in heroin, the defendant moved to suppress evidence consisting of $5,950 in currency seized from his automobile on February 16, 2000. The serial numbers of the currency matched those of currency used in a controlled buy of heroin earlier that day. The district judge granted the motion to suppress on the ground that there was no probable cause to search Johnson's car, and the government appeals.

A number of law enforcement officers had been engaged in surveillance at the scene of a controlled buy of heroin the previous month and had watched as the seller, Moham-

med, approached a red Toyota Corolla driven by a black man; entered the car; left a few minutes later; walked over to the car driven by the informant who was to make the drug purchase; handed him the drugs and received in exchange a bag full of money; and then, as the red Corolla drove up beside him, leaned into the passenger-side window of the car and then returned to his own car. The officers hadn't seen whether Mohammed had handed anything to the driver of the Corolla—whose registered owner, the officers learned shortly afterwards, was under investigation by the British for trafficking in heroin.

At the controlled buy on February 16, also observed by a number of officers, the same Corolla, again driven by a black man (the same man, defendant Johnson), appeared on the scene shortly after the informant had been told by Mohammed that the heroin was on its way. The driver was observed by the surveillance team to be reaching into the right rear seat of the car as Mohammed approached. Mohammed when he arrived at the car was seen reaching into the same place but again was not seen removing anything. He walked from the Corolla to the informant's car, gave him the heroin that the informant had agreed to buy, and received in exchange the money later found in the Corolla. After pocketing the money, Mohammed entered an apartment complex adjacent to the scene of the buy, and the driver of the Corolla entered it too. Shortly afterwards both emerged, got into their respective cars, and drove off. Officers followed the Corolla, and the driver, perhaps suspecting he was being followed, began to drive in an evasive manner. Uniformed police officers stopped him and identified him as Femi Johnson. Rick, a drug-detecting dog, was fetched, sniffed at the outside of the car, "alerted," was then led into the car, and "alerted" at the glove compartment, where the money was found.

Johnson was not arrested, but was merely issued two traffic tickets. The investigating agents didn't want him to know the full extent of their knowledge of his illegal activities. He was not arrested till more than a year later.

In granting the motion to suppress, the district judge acknowledged that on both occasions on which the red Corolla was observed at the scene of a controlled buy, the government had probable cause to believe that the driver, which is to say Johnson, had participated in a sale of an illegal drug and so had committed a crime. The evidence was abundant quite apart from the dog alert, though the judge was not entitled to disregard the alert on the ground that the dog's handler did not testify at the suppression hearing although another officer, who observed the dog alert from a distance, did. Dogs alert to drugs or, in this case, currency containing traces of drugs. *United States v. $639,558 in U.S. Currency*, 955 F.2d 712, 714 n. 2 (D.C. Cir. 1992). "Typically the dog is trained to signal a find in one of two ways: the aggressive alert or the passive alert. Either style requires a dog with strong search drives that reacts reliably when he detects drugs. The dog trained to alert aggressively tries to contact the scent source (biting, scratching, penetrating, attempting to retrieve), while the dog that alerts passively does not try to contact the scent source but instead performs trained behavior (sitting, looking at the source, sniffing toward the source, looking at the handler)." Sandy Bryson, *Police Dog Tactics* 257 (2d ed. 2000); see also Kenneth L. Pollack, "Stretching the Terry Doctrine to the Search for Evidence of Crime: Canine Sniffs, State Constitutions, and the Reasonable Suspicion Standard," 47 *Vand. L. Rev.* 803, 805 n. 11 (1994). Rick is an aggressive alerter. The reason his handler did not testify was that the motion to suppress offered no clue that Johnson meant to contest the alert. Nor did Johnson or his lawyer challenge the government's account

of the alert at the hearing. In any event, Rick's handler was not the only officer capable of interpreting Rick's behavior as alerting to the presence of drugs or drug-infested currency.

Having rejected Rick's evidence, the judge granted the motion to suppress because no officer had observed anything being placed in the Corolla. The judge inferred from this that there was no reason to believe that the car contained contraband or evidence of crime. Actually there was compelling reason to believe that the car contained contraband, specifically the currency that Mohammed had obtained in the illegal albeit government-sponsored sale to the informant. The *only* plausible explanation for Johnson's presence at the buys and for Mohammed's entering Johnson's car on the first occasion and reaching into it on the second was that Johnson had transported the drugs and, after the sale, the money received in exchange for them while Mohammed did the negotiating and transacting with the buyers. This division of responsibilities, standard in the drug trade, see U.S. Sentencing Commission, *Report on Cocaine and Federal Sentencing Policy*, ch. 4, pt.E.2 (1995), http://www.ussc.gov/crack/CHAP4.HTM/); *Spencer v. United States*, 688 A.2d 412, 414 (D.C. 1997), reduced the risk to Mohammed, because it meant he was "clean," while Johnson's risk was reduced by the fact that he stayed in his car—which by the way had tinted windows that made it more difficult to identify him. His flight from the police and the dog alert were just the icing on the cake. Neither Johnson, who testified at the suppression hearing (the only defense witness), nor the judge offered any innocent reason for Johnson's presence at the controlled buys or for his minuets with Mohammed.

REVERSED.

No. 02-2006 5

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*